**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Glen C Hawkins,

Plaintiff,

v.

Dee Ann Maxwell,

Defendant.

No. CV-24-08044-PCT-JAT

**ORDER (REDACTED, UNSEALED)**

Pending before the Court is the August 13, 2026, Report and Recommendation (R&R) by Magistrate Judge Alison S. Bachus. (Doc. 69). After a comprehensive review of the case, the R&R recommends that the Court should grant in part and deny in part the Plaintiff's Amended Motion for Entry of Default Judgment. (*Id*. at 52). Plaintiff objected to the R&R, (Doc. 71), and Defendant did not respond. The Court will accordingly grant default judgment against Defendant and award damages to Plaintiff.

Because the emotional damages Plaintiff requested are barred by statute, the Court will instead award nominal damages so as to recognize Defendant's violation of Plaintiff's Fourteenth Amendment rights. Punitive damages in the amount of $2,000 will be awarded to punish Defendant's assault on Plaintiff's bodily integrity and to deter similar conduct.

## I. BACKGROUND

As a preliminary note, the Magistrate Judge sealed Plaintiff's medical records, citing good cause for doing so.[1] (Doc. 69 at 51). Neither party objected to that decision and that

[1] This decision is at odds with Ninth Circuit Court of Appeals cases, which hold that "to maintain the secrecy of documents attached to dispositive motions must meet the high

issue is not before the Court. The Court will thus redact substantive engagements with Plaintiff's medical records and will also issue an unredacted version of this Order under seal. Though the Magistrate Judge sealed the entire R&R due to its citations to the medical records,[2] this Order will only redact discussion regarding those records. *See Kamakana*, 447 F.3d at 1181 (noting the value of "limited" redactions).

Information or reasoning that does not involve the medical records or is not filed under seal, however, will not be redacted by the Court. Proceeding as such will faithfully follow the Magistrate Judge's order targeting the records and preserve the public's "general right to inspect and copy public records and documents" while still respecting Plaintiff's privacy. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n. 7 (1978). Before beginning in earnest, the Court also notes that Plaintiff does not dispute the accuracy of the R&R's recitation of the facts, which informs the summary below.

**A. The Underlying Incidents**

This case concerns a relationship between Plaintiff, an inmate at the Navajo County Jail, and Defendant, a nurse at that facility. In Plaintiff's telling, the incidents commenced at a blood draw in August 2023, during which Defendant initiated inappropriate physical contact with Plaintiff and asked whether he was married. (Doc. 1 at 3). Defendant then purportedly engaged in a constant "grooming" campaign that consisted of further physical contact and verbal advances. (*Id.*). Plaintiff maintained that he felt pressured into playing along with each of Defendant's actions for fear of retribution. (*Id.*).

The scandal reached its apex in September 2023. Plaintiff alleges that, while he was filling a bucket in a porter closet, Defendant entered, placed his hand on her bottom, and

---

threshold of showing that 'compelling reasons' support secrecy." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (quoting *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir.2002)). And when "a party puts certain information at issue, that party's ability to claim an interest in privacy is weakened" and is therefore less likely to satisfy this high standard. *Hesche v. NXP USA Inc.*, No. CV-19-05268-PHX-DWL, 2020 WL 8461529, *1 (D. Ariz. 2020); *see also Ballard v. Terros Inc.*, No. CV-19-05658-PHX-DWL, 2020 WL 8613674, *2 (D. Ariz. 2020) ("Where, as here, Plaintiff has put her medical condition at issue in the complaint, the Court will not broadly grant leave to file all of Plaintiff's medical records under seal.").

[2] Plaintiff's medical records are contained on a flash drive that the Magistrate Judge cited to as "Records." (Doc. 69 at 16 n.5). The Court will continue this convention.

proceeded to kiss him with her tongue. (*Id.*). Security camera footage confirms that both parties were in the same porter closet. (Doc. 69 at 9-10). It showed the parties smiling and conversing with each other before Plaintiff motioned for her to enter the closet. (*Id.* at 9). At this point in the footage, the parties remain only partially in frame. Yet it is discernable that Defendant's arm embraces Plaintiff's shoulder and Plaintiff placed his left hand on Defendant's bottom. (*Id.* at 10). The two then separated and left the closet. (*Id.*).

A day later, the prison investigated the incident. When confronted with the security footage, Defendant expressed that the incident was unplanned and that she was sorry for what had happened. (*Id.* at 14). Meanwhile, an officer told Plaintiff that he was being moved and disciplined due to the embrace. (*Id.* at 11). During another interview, Plaintiff said that he did not need counseling and that the kiss was mutual, elaborating that he was "in jail and there was a woman." (*Id.* at 13).

Plaintiff was placed in restricted housing from September 2023 to November 2023 as a result of these incidents, with a loss of privileges during that period. (*Id.* at 15). He also alleged that his relationship with Defendant and its repercussions negatively affected his sleep, trust in prison staff, familial relations, and interactions with inmates. (*Id.* at 6).

**B. The Medical Records**

Plaintiff testified that, while confined in restrictive housing, he began experiencing psychological conditions. (*Id.* at 6). He continued, saying that he began weekly treatment in January 2024 and was diagnosed with anxiety, depression, and bipolar disorder. (*Id.*). Although he reported childhood trauma, Plaintiff was clear that his diagnoses stemmed from Defendant's conduct. (*Id.*). The medical records shed light on this testimony.

**[redacted]**[3]

**The Magistrate Judge's Recommendation**

Plaintiff sued Defendant under 42 U.S.C. § 1983, averring that she had violated his Fourteenth Amendment rights. (Doc. 69 at 1-3 (citing Doc. 7 at 4-5)). Because Defendant "intentionally avoided service of process," Plaintiff properly completed service through

[3] A sealed, unredacted version of this Order (which totals 18 pages) was filed this same date.

publication. (Docs. 26, 34). Defendant failed to timely respond to the Complaint and the Clerk of Court entered default against her. (Docs. 35, 26). After an Evidentiary Hearing and discovery regarding Plaintiff's Amended Motion for Default Judgment, the Magistrate Judge issued the R&R at issue. (Docs. 54, 62, 64).

The Magistrate Judge first considered the factors outlined in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th 1986), and determined that they favored granting default judgment. (Doc. 69 at 34-39). She then reached the issue of damages, recommending that the Court grant Plaintiff $1,500 in compensatory and punitive damages alike. (*Id*. at 47, 50). That amount (totaling $3,000) is much lower than the initial $3,000,000 Plaintiff requested in his Complaint and the $1,800,000 he requested during his testimony. (Docs. 1 at 6, 69 at 6). Plaintiff objected to the R&R, claiming that an award of damages exceeding $3,000 was warranted.[4] (Doc. 71). Defendant again failed to respond.

## II. ANALYSIS

This Court has the discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This review is conducted de novo where, as here, one or both parties object to the R&R. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). District courts need not perform any review of any issue to which no party has objected. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1).

### A. Granting Default Judgment

Because neither party disputes that default judgment should be granted under the *Eitel* factors, the Court will accept and adopt the R&R's decision on the issue. *See Thomas*, 474 U.S. at 149. But, because the R&R's discussion of those factors is unavailable to the public, the Court will summarize the adopted reasoning and result. *See Kamakana*, 447 F.3d at 1179 (noting that "the resolution of a dispute on the merits . . . is at the heart of the

---

[4] Throughout this filing, Plaintiff referred to his medical records. Both the medical records and the parts of the R&R discussing those records are under seal given the Magistrate Judge's order, but Plaintiff's objections to the R&R are not. The Court will therefore not redact anything communicated through these objections, even if they implicate or discuss the contents of his medical records.

interest in ensuring the 'public's understanding of the judicial process and of significant public events'") (quoting *Valley Broadcasting Co. v. U.S. Dist. Ct.*, 798 F.2d 1289 (9th Cir. 1986)). No information regarding the sealed medical records is cited in this discussion.

The first factor— the possibility of prejudice to the plaintiff—weighed in Plaintiff's favor because, were the Court to deny default judgment, "Plaintiff would be left without recourse or judicial remedy." (Doc. 69 at 34); *see Eitel*, 782 F2d at 1471-72. The next two factors—the sufficiency of the Complaint and the merits of the claim—favored Plaintiff as well. The Magistrate Judge reasoned that the evidence and legal authority supported the claim that Plaintiff had brought. (Doc. 69 at 35-36) (first citing Doc. 7 at 4-5, then citing *Wood v. Beauclair*, 692 F.3d 1041, 1049 (9th Cir 2012)).

While the first three factors favored Plaintiff, the Magistrate Judge determined that the fourth factor—the amount of money at stake—weighed against him. (*Id*. at 36-37). She noted the inappropriate and concerning nature of Defendant's conduct but found that the requested award of $3,000,000 was not supported by the evidence. (*Id*. at 36). Additionally, the Magistrate Judge explained that Plaintiff failed to describe how he arrived at these requests in the first place. (*Id*. at 36-37). The Court will address the substance of Plaintiff's arguments concerning the proper amount of damages shortly.

Because no factor is dispositive, the Magistrate Judge continued her analysis. The fifth factor—possibility of a factual dispute—favored Plaintiff because Defendant did not engage with the lawsuit and had admitted to the inappropriate contact alleged. (*Id*. at 38). Finally, because Defendant was "made aware" of the lawsuit through service and decided not to participate, the sixth factor—excusable neglect—and the seventh factor—policy considerations—both favored Plaintiff. (*Id*. at 38-39). The Magistrate Judge eventually determined that the balance of factors and considerations made granting default judgment the proper action. (*Id*. at 39) (citing *Eitel*, 782 F2d at 1471-72).

**B. Calculation of Damages**

When Plaintiff requested a total of $3,000,000 in his Complaint, he failed to distinguish between different species of damages. (Doc. 1 at 6). At his hearing, however,

he requested $1,050,000 in compensatory damages and $750,000 in punitive damages. (Doc. 69 at 6). The Court has much discretion to form a proper award: although "a default judgment must not differ in kind from, or exceed in amount" from the Complaint, Fed. R. Civ. P. 54(c), the Court does not demand a preliminary filing to explicitly explain the proffered damages, *see Doe v. United States*, No. CV-17-01991-PHX-GMS (JZB), 2018 WL 2431774, at *8-10 (D. Ariz. May 30, 2018).

Allegations contained in the Complaint are not presumed to be true when reviewing whether an amount of damages is proper. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Plaintiff must "provide an evidentiary basis for the amount asserted." *See AirDoctor, LLC v. Xiamen Qichuang Trade Co.*, 134 F.4th 552, 557 (9th Cir. 2025) (Berzon, J., concurring). The Court finds that, where damages are permitted, Plaintiff has not provided a basis for the award he seeks and a smaller amount is instead warranted.

1. Compensatory Damages

Compensatory damages are meant to redress the concrete loss suffered by reason of the wrongful conduct. *Cooper Indus. Inc. v. Leatherman Tool Group. Inc.*, 532 U.S. 424, 432 (2001). Such damages in a § 1983 action should adequately "compensate persons for injuries that are caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 254 (1978). In addition to monetary harm, such injuries may include reputational impairment, humiliation, and mental suffering. *Id*. at 263; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). Here, Plaintiff requests compensatory damages for his trauma and mental injuries stemming from his sexual abuse. (Doc. 1 at 6). But before the Court can review the Magistrate Judge's recommendation for $1,500, it must ensure that Plaintiff's request for damages is not barred by the Prisoner Reform Litigation Act ("PLRA").

At the start of her analysis, the Magistrate Judge found that it was not. (Doc. 69 at 40-41). Under the PLRA, a prisoner cannot file an action in this Court for "mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." *See* 42 U.S.C § 1997e(e). Although the Magistrate Judge found that the incidents at issue failed to rise to

a "sexual act" as defined in 18 U.S.C. § 2246,[5] she explained that they would be considered more than the *de minimis* showing of a physical injury required under the PLRA. (Doc. 69 at 40) (citing *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002)). To reach that point, the Magistrate Judge relied on a nonbinding decision from the Second Circuit Court of Appeals reasoning that sexual assaults "qualify as physical injuries as a matter of common sense." (*Id.*) (citing *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999).[6]

This Court, however, disagrees with this rationale and instead finds that the PLRA bars Plaintiff's claim for mental or emotional damages. Although the Magistrate Judge's research points to caselaw presenting the opposite conclusion, she failed to account for an important change in the PLRA's text. When the Second Circuit decided *Liner*, the PLRA barred claims absent "a prior showing of physical injury." 42 U.S.C § 1997e(e) (1999). The current version, meanwhile, bars claims absent a prior showing of either a "physical injury" *or* a defined "sexual act." 42 U.S.C § 1997e(e) (2026).

It is a hallmark of statutory interpretation to treat the inclusion of "one item of [an] associated group or series" as excluding "another left unmentioned." *United States v. Vonn*, 535 U.S. 55, 65 (2002); *see Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005). By cross-referencing § 2246's definition of "sexual act" while leaving out the neighboring definition of "sexual contact," Congress prohibited the sexual contact alleged by Plaintiff from giving rise to a suit for emotional damages. And given the proximity of one definition to another, it is beyond doubt that "the term left out must have been meant to be excluded." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017). Moreover, neither *Liner* nor its adherent cases explain "why sexual assault or battery necessarily constitutes

[5] The Court agrees that the various sexual acts defined in that section do not match the circumstances here. Rather, they come closer to "sexual contact," defined as "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

[6] The R&R also cited district court decisions that similarly relied on *Liner* to explain why the PLRA did not bar a prisoner from filing an action for a mental or emotional injury in cases concerning sexual contact. (*Id.*) (first citing *Cleveland v. Curry*, No. 07-CV-02809-NJV, 2014 WL 960846, at *6-7 (N.D. Cal. Feb. 21, 2014), then citing *Doe v. United States*, No. CIV. 12-00640 ACK-RLP, 2014 WL 7272853, at *8 (D. Haw. Dec. 17, 2014)).

'physical injury.'" *Johnson v White*, 989 F.3d 913, 918 n.4 (11th Cir. 2021). Nor could they address the interpretive concerns above; Congress had not yet amended the PLRA to include sexual acts at the time *Liner* was decided. *Id*.

Plaintiff's request for compensatory damages does not clear the PLRA's initial hurdle. To begin, he does not argue—for good reason—that Defendant's conduct meets the definition of "sexual act" under § 2246. And as a matter of statutory interpretation, Defendant's conduct cannot show a prior "physical injury." *See Johnson*, 989 F.3d at 918 n.4. Nor will Plaintiff's symptoms of anxiety, depression, and bipolar disorder satisfy that showing. *See, e.g.*, *Davis v. Dist. of Colum.*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (collecting cases saying that such symptoms will not constitute a physical injury); *McCloud v. Tureglio*, No. 9:07-CV-0650, 2008 WL 1772305, at *9 (N.D.N.Y. Apr. 15, 2008) (collecting cases). Plaintiff's claim therefore should be dismissed insofar as he requests compensatory damages for an emotional or mental injury. *See* 42 U.S.C § 1997e(e).

This is not to say that Plaintiff has not established that his constitutional rights were violated. The problem is that, no matter whether Defendant's conduct amounted to a violation of constitutional rights, the PLRA bars emotional damages for sexual abuse that does not meet its definition of a "sexual act." *Cf. Lewis v. Lyon,* No. 2:23-CV-138, 2024 WL 816790, at *7 (D. Vt. Jan. 4, 2024), *report and recommendation adopted*, No. 2:23-CV-138-WKS-KJD, 2024 WL 809886 (D. Vt. Feb. 27, 2024) (holding that the PLRA prevented a prisoner from collecting compensatory emotional damages after an incident where a prison staff member kissed and touched him); *see also Kaufman v. Pac. Forensic Psych. Assocs., Inc.,* No. 22-cv-05043-JSW, 2022 WL 16716152, at *2 (N.D. Cal. Nov. 4, 2022) (dismissing a sexual harassment case against an officer under the PLRA).

Insofar as Plaintiff's "claims for compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations," the Court's analysis will nevertheless move forward. *See Oliver*, 289 F.3d at 630; *see Carey*, 435 U.S. at 254. Right away, the Court finds that the PLRA prevents Plaintiff's entitlement to the $300,000 he requested for "pain

and suffering." (Doc. 69 at 6). That prohibition removes the Court's need to independently account for the humiliation, reputational impairment, or other institutional consequences reiterated in the objections (Doc. 71 at 7, 13); since Plaintiff cannot secure compensatory damages for emotional or mental distress, there is no reason to dwell on factors that would inform such a reward.[7]

In addition to his request for "pain and suffering," Plaintiff requests compensatory damages in the amount of $750,000 to cover the cost of any future therapy and medication. (Doc. 69 at 6). Although that amount may be more quantifiable than an award attempting to quantify pain or suffering, this request is inextricably intertwined with that for emotional or mental harm. Indeed, the Ninth Circuit has included medical treatment as a factor when calculating emotional distress. *See Bell v. Williams*, 108 F.4th 809, 832 (9th Cir. 2024). And a convincing number of district courts also agree that "mental health treatment costs constitute emotional distress damages because they stem from emotional distress as the underlying injury." *See J.L. v. Lower Merion Sch. Dist.*, No. 20-1416-KSM, 2024 WL 5250301, at *8 (E.D. Pa. Dec. 30, 2024) (collecting cases); *Nicholson v. Delgado*, No. 1:12–CV–00470–EJL–CWD, 2014 WL 6895566, at *3-4 (D. Idaho Dec. 5, 2014).

Plaintiff's request for the costs of prospective treatment is doubtless "grounded" in his emotional distress contentions. *See Doherty v. Rice*, 101 F.4th 169, 175 (2d Cir. 2024); *Bell*, 108 F.4th at 832. This is because Defendant's conduct was a contributing cause of the symptoms Plaintiff was—and would be—treating. Plaintiff himself said as much in his testimony when he alleged that Defendant's inappropriate contact was related to treatment for anxiety and depression. (Doc. 69 at 6). He repeated the same in his objections to the R&R, continuously asserting that his prescriptions and therapy focused on the effects of Defendant's actions. (Doc. 71 at 9-12).

The medical records likewise adduce that Plaintiff's future treatment would stem from emotional or mental harm done by Defendant's conduct. **[redacted]**

For these reasons, the Court finds that Plaintiff's request for compensatory damages

[7] The Court notes that Plaintiff has not explained how those considerations caused any redressable harm outside of emotional or mental distress.

for future therapy and medication is best viewed as stemming from emotional or mental distress. *See Bell*, 108 F.4th at 832. And because the PLRA stops Plaintiff from recovering such damages without a showing of a prior physical injury or a sexual act, *see* 42 U.S.C § 1997e(e), the Court will not grant Plaintiff's request for $750,000. Nor will it grant his other requests for compensatory damages, for they each run afoul of the PLRA.

2. Nominal Damages

Although all of Plaintiff's proffered compensatory damages are premised on his unrecoverable mental or emotional distress, the Court will also consider whether nominal damages are warranted. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that pro se complaints may be construed liberally); *Allah v. Al–Hafeez*, 226 F.3d 247, 251 (9th Cir. 2000) (construing a pro se complaint to include a claim for nominal damages where it sought only compensatory and punitive damages). After all, deprivation of a constitutional right entitles one to judicial relief aside from the redress of any physical injury shown. *See Oliver*, 289 F.3d at 630 (citing *Canell v. Lightner*, 143 F.3d 1213 (9th Cir. 1998)).

"Nominal damages must be awarded" if a constitutional violation is evident but "no actual injury is incurred or can be proven." *Hazle v. Crofoot*, 727 F.3d 983, 991 n. 6 (9th Cir. 2013). Such damages are "intended to serve as a symbol that [a] defendant's conduct resulted in a technical, as opposed to injurious, violation of [a constitutional right]." *Cummings v. Connell*, 402 F.3d 936, 945 (9th Cir. 2005); *see Soffer v. City of Costa Mesa*, 798 F.2d 361, 363 (9th Cir. 1986) (upholding a nominal damage award in a § 1983 action because the plaintiff did not prove any damages at trial).

The R&R found that Plaintiff's rights protected by the Fourteenth Amendment were violated, and Plaintiff made no objection to that finding. *See Thomas*, 474 U.S. at 149. The Fourteenth Amendment's protection of bodily integrity applies to those held in prison. *See, e.g.*, *Fontana v. Haskin*, 262 F.3d 871, 881-82 n.6 (9th Cir. 2001), *Sepulveda v. Ramirez*, 967 F.2d 1413, 1415-16 (9th Cir. 1992). A government officer violates this right when her behavior is found to be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Fontana*, 262 F.3d at 882 n.7 (quoting *City of Sacramento v.*

*Lewis*, 523 U.S. 833, 848 n.8 (1998)).

The Court agrees with Plaintiff and the R&R that the evidence here is sufficient to show that Defendant violated Plaintiff's right to bodily integrity such that nominal damages are warranted. She abused her position at the prison to engage in an inappropriate relationship with Plaintiff, as shown by the security camera footage recording the embrace and reported kiss, Plaintiff's testimony, and her own admissions to her superior. *See* (Doc. 69 at 6-14); *Wood v. Beauclair*, 692 F.3d 1041, 1047 (9th Cir. 2012) (presuming that a relationship between a prisoner and prison official is not consensual). While this relationship might not be as extreme or predatory as those detailed in cases cited by Plaintiff, *see* (Doc. 69 at 46-47), it keeps company with circumstances that have been held to "shock the contemporary conscience." *See Fontana*, 262 F.3d at 882 n.7.

Indeed, the facts at issue in *Fontana* itself somewhat mirror those at issue here. In that case, a police officer engaged in the "unreasonable, non-consensual, inappropriate touching and propositioning" of a detainee. Though the Ninth Circuit resolved *Fontana* on non-Fourteenth Amendment grounds, it posited that its finding of a constitutional violation would have been the same had it applied the Fourteenth Amendment's test to the given facts. *Id*. Defendant paid similar unwanted attention to Plaintiff during their documented interactions, initiating unreasonable and nonconsensual touching. *See* (Doc. 69 at 6-14). This amounts to a violation of Plaintiff's Fourteenth Amendment rights that necessarily requires some form of judicial redress. *See Oliver*, 289 F.3d at 630.

Because the compensatory damages sought by Plaintiff are barred by the PLRA, the Court will award him nominal damages of $1.00 to ensure that his constitutional rights are respected, even though Defendant's violation thereof resulted in no redressable damages. *See Cummings*, 402 F.3d at 945; *Soffer*, 798 F.2d at 363. While this award is substantially smaller than the initial request, the Court finds that it has compensated Plaintiff as much as possible given the PLRA's restriction on emotional damages. *See Guy v. City of San Diego*, 608 F.3d 582, 587 (9th Cir. 2010); *Farrar v. Hobby*, 506 U.S. 103, 115 (1992).

3. Punitive Damages

An award of nominal damages leaves the possibility of punitive damages, which "may be the only remedy available" where a victim's constitutional rights have been violated but he could not prove a compensable injury. *Smith v. Wade*, 461 U.S. 30, 55 n.21 (1983). Whereas compensatory and nominal damages are intended to redress the victim, punitive damages are awarded with an eye to deterrence and retribution. *State Farm Mut. Ins. Co v. Campbell*, 538 U.S. 408, 416 (2003). In actions arising under § 1983, punitive damages are warranted when the defendant's conduct is motivated "by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith*, 461 U.S. at 54.

Under the Due Process Clause, an award of punitive damages cannot be excessive. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 (1996). With that in mind, the Supreme Court has articulated three factors to account for when granting or reviewing an award for punitive damages: (1) the "reprehensibility of the defendant's conduct"; (2) the difference between the "actual or potential harm" suffered by the plaintiff and the amount awarded; and (3) the disparity between the punitive damages awarded and the "penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418.

Applying these factors, the Magistrate Judge determined that punitive damages in the amount of $1,500 would be sufficient to punish and deter Defendant. (Doc. 69 at 50). Plaintiff, however, generally objected to that award and likely favors something closer to the $750,000 he previously requested. (Docs. 69 at 6; 71 at 2, 21). After considering the *State Farm* guideposts, the Court finds that punitive damages of $2,000 are proper.

To begin, Defendant's abuses of her position and sexual advances in the prison were reprehensible and evidence of a reckless and callous disregard for Plaintiff's right to bodily integrity. *See State Farm*, 538 U.S. at 418; *Smith*, 461 U.S. at 54. Plaintiff reported a pattern of sexual comments, touching, and grooming from August 2023 to September 2023. (Doc. 1 at 3). This led to at least one recorded incident of excessive and inappropriate touching, which likely included groping and a kiss. *See* (Doc. 69 at 6-14). And because a "power

disparity between prisoners and prison guards is similar to that of an adult over a child," courts will presume such actions and relationships to be nonconsensual and involuntary. *Wood*, 692 F.3d 1047-48. The Court understands that these kinds of power imbalances are serious, especially where sexual exploitation is concerned.

That said, the R&R is correct that there is reason to think that Plaintiff's reactions to Defendant's conduct lessen the overall degree of reprehensibility involved. (Doc. 69 at 50). The security footage revealed that both parties were smiling through and after the incident, including when they were not facing each other. (*Id*. at 9-10). A different private reaction would generally be expected of a prisoner forced into a nonconsensual sexual situation. Similarly, Plaintiff explained that the embrace and reported kiss was mutual, reasoning that he was "in jail and there was a woman." (*Id*. at 13). The security footage indeed reflects that, contrary to Plaintiff's testimony, he moved his hand to Defendant's bottom of his own accord rather than be directed or forced to do so. (*Id*. at 10).

These facts, plus the lack of force or threats thereof, weighs against granting an award of punitive damages in the amount requested by Plaintiff. *See Wood*, 692 F.3d at 1048 (explaining that the presumption of nonconsent was not rebutted when the prisoner told an official "back off" before the official hugged and kissed him). These observations, of course, do not relieve Defendant of the inexcusable and abusive conduct she committed on at least two occasions or the need to face the civil consequences of that conduct.

Turning to the second guidepost, the Court understands that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. But here, because the award of "nominal damages measure neither damage nor severity of conduct, it is not appropriate to examine the ratio of a nominal damages award to a punitive damages award." *See Arizona v. ASARCO, LLC*, 773 F.3d 1050, 1058 (9th Cir. 2014) (en banc) (collecting cases). This analysis consequently proceeds to the final guidepost.

The third factor—the examination of punitive damages in other cases—is especially illuminating. *See Hendrickson v. Cooper*, 589 F.3d 887, 894 (7th Cir. 2009) ("[I]t is useful

to compare the challenged punitive damages award with other awards upheld in the past."). Some federal courts have seen fit to award damages in the millions for especially egregious conduct, primarily violent rape over a period of time. *See, e.g.*, *Pizarro v. Quezada*, No. 24-2422, 2025 WL 2865251, at *4 (2d Cir. Oct. 9, 2025) (collecting cases); *Doe v. United States*, CV-17-01991-PHX-GMS, 2018 WL 2431774, at 5-10 (D. Ariz. May 30, 2018) (awarding $1,250,000 in punitive damages against an officer who repeatedly raped the handcuffed and contained victim). Plaintiff does not contend that Defendant's conduct rose to such an extreme level of sexual violence. (Doc. 71 at 15).

Courts have also approved awards of punitive damages that ranged from $100,000 to $500,000 against correctional officers that had raped inmates or had engaged in a pattern of sexual assault. *See, e.g.*, *Vargas v. Oh*, CIVIL NO. 19-00116 LEK-WRP, 2024 WL 946510, at *8 (D. Haw. Feb. 1, 2024) (collecting cases). To be sure, Defendant's conduct is condemnable and casts a shadow over Plaintiff's well-being, especially in light of his past traumatic experiences. But his case is different in kind from one in which the victim was physically forced to engage in a sexual act or was raped while in a helpless state. And, as Plaintiff repeats, this Court has the discretion to weigh his circumstances against others when choosing from the range of possible punitive damages. (Doc. 71 at 15-17).

The Court agrees with the R&R that a lower amount of punitive damages is needed given the severity of Defendant's actions when compared to the facts behind higher awards and the possible mutuality of the porter closet incident. The Magistrate Judge cited three cases of note, each awarding punitive damages of $5,000 for inappropriate behavior and the grabbing of the victims' genital area. *See* (Doc. 69 at 50). The first case concerned an officer who grabbed inmates' privates over the course of two years, No. 07–cv–02809–NJV, *Cleveland v. Curry*, 2014 WL690846, at *9-11 (N.D. Cal. Feb. 24, 2014), the second case concerned an officer who hugged a victim, touched her breast, and fondled her genital area, *Morton v. Johnson*, Civil Action No. 7:13cv00496, 2015 WL 4470104, at *9 (W.D. Va. July 21, 2015), and the third case concerned a medical provider who grabbed an inmate's penis on multiple occasions, *Oxendine-Bey v. Harihan*, No. 5:12–CT–03084–FL.,

2015 WL 5331809, at *8 (E.D.N.C. July 22, 2015).

The Court's own research confirms that cases in which a corrections worker engages in sexual contact less extreme than a clear sexual action, *see* 18 U.S.C. § 2246, engender similar awards of punitive damages. *See Hardy v. Moreno*, Case No. 1:21-cv-00327-KES-EPG, 2025 WL 2299516, at *9 (E.D. Cal. Aug. 8, 2025) (awarding $5,000 against a defendant who needlessly ordered an inmate to remove his clothes for a full body search); *Drumgo v. Kuschel*, Civil Action No. 14-1135-CFC, 2022 WL 3646349, at *5-6 (D. Del. Aug. 24, 2022) (awarding $5,000 against a defendant who forcibly grabbed the plaintiff's genitals during a search).

Upon reflection of these comparative cases and the reprehensibility of Defendant's actions, the Court finds that a punitive damages award of $2,000 is proper. The cases most similar to Plaintiff's are *Drumgo*, *Morton*, *Cleveland*, and *Oxendine-Bey*, each of which featured an official fondling or groping the private area of a victim. On balance, however, the facts here do not quite match the facts of these cases because there was some level of mutuality evident in the record and this contact never extended to Plaintiff's genital region. The security footage indeed shows that Plaintiff placed his hand on Defendant's bottom of his own volition. (Doc. 69 at 10). With this in mind, a slightly lower award of $2,000 best deters and punishes the conduct here. *See State Farm*, 538 U.S. at 418. In coming to this conclusion, the Court has examined the factors identified in the objections filed by Plaintiff, (Doc. 71 at 19-20), but finds that they do not support a higher award of punitive damages.

**C. Costs**

Unless a federal statute, rule, or court order demands otherwise, litigation costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54. Plaintiff may file a Bill of Costs as provided for in Local Rule Civil 54.1 for all taxable costs. If Plaintiff seeks non-taxable costs, he may file a motion in compliance with Local Rule Civil 54.2.

## III. CONCLUSION

The Court will enter into default judgment against Defendant given her violation of Plaintiff's Fourteenth Amendment right to bodily integrity. Although her sexual conduct

gives rise to nominal and punitive damages against her, the PLRA prevents Plaintiff from collecting compensatory damages for his emotional or mental distress. Punitive damages of $2,000 best accounts for the imbalanced nature of the relationship and the inappropriate sexual contact while respecting the more severe sexual patterns engendering higher awards.

Accordingly,

**IT IS ORDERED** that the Report and Recommendation (Doc. 69) is accepted in part and modified in part as specified above. The objections (Doc. 71) are overruled.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Motion for Entry of Default Judgment (Doc. 40) is granted in part and denied in part. Specifically, that (1) default judgment is entered against Defendant as to Count One, the only remaining claim in the Complaint; (2) Plaintiff is awarded nominal damages in the amount of $1.00 and punitive damages in the amount of $2,000; (3) pre-judgment interest and attorney fees are denied; and (4) post-judgment interest on the judgment be assessed at the statutory rate of 28 U.S.C. § 1961. The Clerk of the Court, therefore, must enter judgment[8] in the amount of $2,001.00 in favor of Plaintiff Glen C. Hawkins and against Defendant Dee Ann Maxwell with post-judgment interest accruing at the statutory rate; the Clerk of the Court must also enter judgment in favor of Defendant Benoiese and against Plaintiff based on the Order at Doc. 7. Because the judgment resolves all claims against all defendants, the Clerk of the Court shall close this case.

**IT IS FURTHER ORDERED** that any Bill of Costs and/or Motion for Non-Taxable Costs must be filed no later than 14 days from the date of this Order, and if neither is timely filed, the request for costs will be considered abandoned. Plaintiff must document his requests as provided in the Civil Local Rules.

/ / /

/ / /

/ / /

/ / /

[8] The judgment shall not be sealed.

**IT IS FURTHER ORDERED** that any other relief sought in the Amended Motion for Entry of Default Judgment is denied.

Dated this 22nd day of September, 2026.

James A. Teilborg
Senior United States District Judge